# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **RESPONDENT**. | : | **APPEAL NO.** |
| | : | **13:14112-B** |
| **VS.** | : | |
| | : | **CIVIL NO.** |
| **PIERRE ERNEST FALGOUT III,** | : | **6:10-CV-08037-RDP-JHE** |
| | : | |
| **PETITIONER.** | : | |
| | : | |

---

## APPLICATION FOR CERTIFICATE OF APPEALABILITY

---

COMES NOW, Petitioner Pierre Ernest Falgout, by and through undersigned counsel and files this Certificate of Appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and Eleventh Circuit R. 22-1(b).

On July 12, 2013, the District Court for the Northern District of Georgia denied Petitioner's § 2255 Motion, but failed to address whether a Certificate of Appealability should be issued. Therefore, pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure and Eleventh Circuit R. 22-1(a) and (b), this Certificate of Appealability is timely and should be granted on one or all issues presented.

# I.

## STATEMENT OF THE CASE

### A. COURSE OF PROCEEDINGS

On or about June 26, 2008, Petitioner entered a non-negotiated plea to thirty-two counts of violating 18 U.S.C. § 2251(a). (Crim. Docs. # 22, 39).[1] Subsequently, Petitioner was sentenced to 960 years in prison. (Crim. Doc. # 30).

Petitioner appealed his case to the Eleventh Circuit. The Eleventh Circuit affirmed his conviction in *United States v. Falgout,* 325 Fed. Appx. 725 (11th Cir. 2009). Petitioner filed a timely petition pursuant to 28 U.S.C. § 2255. (Civ. Doc. #1). On July 12, 2013, the District Court for the Northern District of Alabama denied Petitioner's § 2255 Motion but failed to address whether a Certificate of Appealability should issue. (Civ. Doc. # 20).  A notice of appeal was filed on September 9th, 2013 with a COA (Civ. Doc. #22). The District court subsequently filed an order denying the 2255 and COA on September 10th, 2013 (Civ. Doc. #25).

---

[1] As the district court did in its order, Petitioner will refer to the underlying criminal case (*United States v. Falgout*, Case No. 6:07-cr-157) as "Crim. Doc." and the § 2255 civil habeas action (*Falgout v. United States*, Case No. 6:10-cv-8037) as Civ. Doc.

## B. STATEMENT OF THE FACTS

The crux of this dispute centers around the information Petitioner had available to him at the time he entered the plea and what occurred at the plea hearing and sentencing.

First, at the time Petitioner entered his plea, he was unaware that he could have argued that the evidence against him should be suppressed as a result of evidence tampering. Specifically, as Petitioner showed in his original § 2255 motion and his reply in support of same, the officer involved in his arrest was charged with and convicted of tampering with evidence in this case. *See e.g.,* (Civ. Doc. # 19 Attachment A); *See also* http://www.tuscaloosanews .com/article/20070501/NEWS/705010351. Later, this same officer made a statement indicating that he has thought of nothing except the possibilities of how to rectify the problem so that the legal case against Petitioner could proceed without hindrance or chances of dismissal - "Anything I can possibly to do remedy any harm done to the legal process I will do." (*See id.*). Although the district court summarily attempts to classify the evidence regarding the evidence tampering which lead to a Fourth Amendment violation as lacking "specificity[,]" it is hard to think of more specific proof of evidence tampering than a conviction and admission and the exhibits attached to the petition supporting the tampering. A

defendant, merely by the number of images charged that such tampering had an injurious effect on the court. (Civ. Doc. # 20, pp. 12-13).

Further, at the time Petitioner entered the plea, counsel advised him that he was facing a sentence somewhere between 15-30 years. Importantly, Petitioner was advised that he faced a maximum of 30 years, which was confirmed in Petitioner's correspondence, which clearly shows that he expected something in the vicinity of the minimum mandatory of 15 years to the maximum of 30 years. (*See* Civ. Doc. # 10 and Exhibits thereto).

Additionally, the court did not clarify Petitioner's true sentencing exposure. While the sentencing court did list the maximum for each count, it never explained that the sentence on each count could be run consecutively, exposing Petitioner to a much greater sentence. In fact, listing the 30 year maximum for each count helped to confirm counsel's advice, because what the Petitioner kept hearing was a maximum of thirty years. (Crim. Doc. # 19-24).

At sentencing it became apparent that sentencing counsel misadvised Petitioner regarding his sentence exposure because counsel himself misunderstood it. Specifically, at sentencing counsel revealed his belief that the maximum sentence was less than life when he argued that if congress intended the statutory maximum to be life they would have said so. (Crim. Doc. # 40, pp, 70-71). Additionally, sentencing counsel's strategy evidenced in his sentencing

4

memorandum shows that counsel was not asking the court to go from 960 years to 15 to 30 years, rather it indicates that counsel believed that the sentencing range was 15 to 30 years and that Petitioner could get as little as 15 years because the sentences could run concurrently. (Crim. Doc. # 27).

The defect in counsel's advice is even more critical because Petitioner learned that the sentencing court believed that it was required to sentence Petitioner to consecutive sentences based on the PSR. (Crim. Doc. # 40, pp. 70-71). At this point, Petitioner learned that if the sentencing court was correct, then counsel's advice that he could receive 15-30 years was false.

After being shocked to receive a 960-year sentence on a plea, Petitioner, represented by plea and sentencing counsel, appealed his conviction. Not surprisingly, in this direct appeal Petitioner did not raise counsel's errors because he was still represented by him. Rather, Petitioner argued that the indictment was duplicitous, that his sentence was unreasonable, and that the sentence violated the Eighth Amendment. The Eleventh Circuit affirmed his conviction in *United States v. Falgout,* 325 Fed. Appx. 725 (11th Cir. 2009).

Petitioner then filed, and eventually amended, a motion pursuant to 28 U.S.C. § 2255, alleging that (1) he did not voluntarily enter the guilty plea and counsel was ineffective; (2) that the evidence used to convict him was obtained in violation of his Fourth Amendment rights and counsel was ineffective in failing to

advise Petitioner regarding these grounds; (3) counsel was ineffective for failing to fully apprise him regarding his maximum sentence exposure; (4) counsel was ineffective for failing to inform him that by entering the plea he waived his challenge to the indictment as duplicitous; (5) counsel was ineffective for failing to object to factual statements in the presentence investigation report ("PSR"); (6) counsel was ineffective for failing to make discovered evidence available to Petitioner; and (7) counsel was ineffective for failing to negotiate a more favorable plea bargain. (Civ. Doc. #1). On July 12, 2013, the District Court for the Northern District of Alabama denied Petitioner's § 2255 Motion. (Civ. Doc. # 20). All of these issues are specifically reserved for § 2255 litigation.

With regards to the two substantive counts – the voluntariness of the plea and the Fourth Amendment challenge – the district court found that these were procedurally defaulted because Petitioner had not established ineffective assistance of counsel and, therefore, could not establish cause for the default. (Civ. Doc., p. 8). Additionally, the district court also rejected these counts on the merits, finding that Petitioner was fully apprised of the charges against him, of his rights, of the maximum sentence on each count, and because Petitioner plead guilty he waived his Fourth Amendment challenge. (Civ. Doc., p. 8-13). Notably, the district court did not address the plea court's failure to explain that the sentences could run consecutively on each count or Petitioner's argument that he failed to raise the

Fourth Amendment argument because plea counsel was ineffective in failing to advise him that such an argument existed and could affect the availability of the evidence against him. (*Id.*).

The district court likewise rejected the remaining ineffective assistance of counsel arguments, finding that the record shows that Petitioner was advised of the of the maximum sentence he would receive, that Petitioner has not alleged that he would not have entered the plea had he known he could not challenge the indictment, that Petitioner admitted all of the predicate facts in the PSR so there was no ineffectiveness for failing to challenge, that counsel was not required to give Petitioner all of the evidence against him and Petitioner was already aware of this evidence, and counsel was not ineffective in failing to pursue a plea because there was no plea offered and entering a plea would have resulted in a waiver of appellate rights. (*Id.* at pp. 13-19). Notably, the district court failed to address that while Petitioner was advised of the 30 year maximum sentence the counts against him carried, he was not advised that these could run consecutively and <u>nowhere</u> is there any indication that Petitioner was told that he was facing a possible 960 years in prison. Further, in his original § 2255 Motion, Petitioner does allege that he would not have entered the plea knowing that he was waiving the duplicitous indictment appeal. Specifically, Petitioner said, "I did not waive duplicity argument by pleaing guilty. I wasn't told I had this right to waive. I was misled."

No one would plea out knowing he or she was looking at 960 years. Anyone that knew he had a duplicity argument would not have waived it but keep it as a right to appeal. (Crim. Doc. # 47, p. 9).[2]

## II.

## ARGUMENT AND CITATION OF AUTHORITY

## I. STANDARD OF REVIEW

The standard for granting a Certificate of Appealability is governed by the AEDPA (Anti-terrorism and Effective Death Penalty Act). As amended, 28 U.S.C. § 2253 and Rule 22(b) of the Federal Rules of Appellate Procedure mandates that a Certificate of Appealability ("COA") be issued before a prisoner may appeal the final order of a *habeas* proceeding. 28 U.S.C. § 2253(b)(B); *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Because the district court denied Petitioner's § 2255 motion, the Eleventh Circuit will grant a COA if Petitioner can show (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, *supra*.

---

[2] The court's opinion denying the 2255 is riddled with errors over the child pornography video. Even though this case presents difficult facts the legal issues are constitutional and require further independent review.

A petitioner seeking a COA need only demonstrate a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockerell,* 537 U.S. 322, 335-37, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). The standard is satisfied when the "*habeas* petition involves issues which are debatable among jurists of reason, that another court would resolve the issues differently, or that the issues are adequate to deserve encouragement to proceed further." *Id*.; *Slack, supra.*

The opinion in *Slack* held that a COA does not require a showing that the appeal will succeed. Accordingly, the application for a COA should not be denied merely because the court believes the petitioner will not prove an entitlement to relief. See *Miller-El,* 537 U.S. at 337 (finding that "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.")

Petitioner states that the District Court erred in not granting Petitioner's §2255 motion because he was denied his constitutional right to effective assistance of counsel and his plea was unknowing and involuntary. At a minimum, reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right." Wherefore some or all of the issues presented herein should be reviewed by this honorable court.

9

## II. ISSUES FOR GRANTING A COA

### A. WHETHER A DEFENDANT'S PLEA IS INVOLUNTARY AS A RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR IMPROPER ADVICE REGARDING CONSECUTIVE SENTENCING EXPOSURE

The district court asserts that Petitioner was adequately advised regarding his sentence exposure because he indicated on a form he had been advised of his sentence exposure and because the court described the sentence for each count. (Civ. Doc. #20, pp. 8-13) This form does not discuss that the maximum sentence could be 960 months, because all counts could or would run consecutively. Petitioner, however, signed this form thinking that the maximum sentence he faced was 30 years, a thought that he believed was confirmed when the plea court listed the maximum sentence for each count as 30 years. Counsel failed to adequately inform Petitioner of the reality that he could receive consecutive sentences on each count amounting to 960 years in prison. The correspondence and statements on the record clearly confirm that Petitioner was wrongly advised that he faced a maximum of thirty years. Therefore, the district court's decision rejecting Petitioner's claim that his plea was involuntary and that counsel was ineffective was in error.

Counsel should have objected at the plea hearing if he knew consecutive sentencing was probable to meet the guidelines or at sentencing when the court thought consecutive sentencing was mandated to achieve a life under the

guidelines.  This court should address the following aspects of this issue which are debatable among reasonable jurists of the deprivation of a constitutional right:

1. Is counsel ineffective in failing to advise Petitioner on the record that the actual maximum sentence could be greater than 30 years as a result of consecutive sentencing exposure?

2. Is counsel ineffective for failing to advise Petitioner on the record that the sentencing exposure he was facing could be greater than 30 years and that the court could run the counts plead to consecutive to achieve a guideline sentence higher than the maximum on any one count?

3. Is counsel ineffective in failing to object to the court's belief that consecutive sentencing is mandatory if the guidelines exceeded the maximum sentence on any one count?

4. Whether Petitioner could not have entered a knowing and intelligent plea with the misadvice of counsel and the court as to consecutive sentencing being mandatory?

It is well settled law that it is ineffective assistance if counsel fails to advise or incorrectly advises his client regarding the maximum sentence exposure. *See e.g., United States v. Berry*, 61 Fed. Appx. 797, 800 (3d Cir. 2003)  ("However, the government does concede that if, as [the defendant] alleges, his attorney advised

him that he faced a maximum sentence of ten years imprisonment upon conviction, counsel's advice was erroneous and therefore breached his duty 'to advise his client fully on whether a particular plea to a charge appears to be desirable.'"); *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981) ("When a defendant pleads guilty on the advice of counsel, the attorney has the duty to advise the defendant of the available options and possible consequences"). This duty extends to specifically advising a client regarding the possibility of consecutive sentences. *See e.g.*, *Page v. Martuscello*, No. 10 Civ. 9699(JSR)(AJP), 2011 WL 3678820, at * 25 (S.D.N.Y. Aug. 23, 2011)("Trial counsel [] had a duty to inform [the defendant] about his maximum sentencing exposure so that [the defendant] could make an informed decision whether to accept the twelve-year plea offer; to prevent coercion, he was free to advise [the defendant] that he thought consecutive sentences were extremely unlikely."). *See also United States v. Gordon,* 156 F.3d 376, 380 (2d Cir. 1998) ("By grossly underestimating [the defendant's] sentencing exposure ..., [counsel] breached his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable." (citations omitted, emphasis added)). Counsel has a duty to adequately advise his client regarding the possibility of consecutive sentences because "[f]ailing to advise a client of factors that could negate the benefit of a guilty plea may render the plea involuntary." *Rinkey v. McQuiggan*, No. 11–1885, 2013 WL 69436, at *2

12

(6th Cir. Jan 8, 2013) ("trial counsel had an obligation to ensure that his client understood that he faced the possibility of consecutive sentences.").[3]

The Second Circuit's decision in *United States v. Gordon*, 156 F.3d 376, 377 (1998) is instructive in this matter. In that case, defense counsel advised his client that he faced a 120 month maximum sentence rather than the 262-327 months that he actually faced. Based on this advice, the defendant rejected a plea offer and proceeded to trial, was convicted, and was sentenced to 210 months. The defendant's 28 U.S.C. § 2255 based on his counsel's improper advice was granted. In affirming this relief, and rejecting the government's argument that any error was negated because counsel also informed his client about the "possibility" of consecutive sentences, the Second Circuit explained that " '[a]lthough [defense counsel] does mention in his letter that there is a possibility that Gordon could be sentenced to ten years for each count under the indictment consecutively, his conclusion is clear that Gordon faced a maximum incarceration of 120 months[]" and that this gross underestimation was ineffective. *Id.* at 380.

Similarly, in *Martuscello*, the Southern District of New York, relying in part on *Gordon*, found that counsel was ineffective in advising his client that he faced 25 years to life, when in actuality he faced almost fifty more years because of the

---

[3]    Petitioner neither understood nor was advised of the sentencing exposure under the guidelines and that any sentence required consecutive terms for each count pled to.

possibility of consecutive sentences. 2011 WL 3678820, at *22.[4] Based on this, the court found that even though counsel did not think that consecutive sentences were a realistic possibility, "[g]iven the significant disparity between the twelve-year plea and the maximum sentence of sixty-five years to life (in essence the difference between Page getting out of prison before his thirtieth birthday or being in jail until at least seventy-seven years old), this Court finds that trial counsel Friess had a duty to inform Page of possible consecutive sentencing and was ineffective for not doing so." *Id.* at *24.

It is important to note that this case is entirely distinguishable from those cases finding that there is no duty to advise a defendant whether his federal sentence will run consecutive to a state sentence because "[c]onsequences of a guilty plea unrelated to the length and nature of the federal sentence are not direct consequences." *Duarte v. United States*, No. 2:11–CV–297 TS, 2011 WL 4499330, at *1 (D. Utah Sept. 27, 2011) ("discussing a sentence that will run consecutive to a state sentence, "[t]he court further stated: A consecutive sentence does not affect the length or nature of the federal sentence, even though it increases the total length of the defendant's incarceration. Thus, the consecutive nature of a

_____

[4] Although the court mentioned that there *may* be instances where counsel *may* not need to advise regarding the consecutive nature of sentences, it was required in this instance because of the great disparity. *Id.* at*24. An even greater disparity is present here between the 30 year maximum counsel referred to and the 960 year sentence Petitioner received.

sentence is not a direct consequence about which the defendant must be advised.")
(internal quotations omitted). *See also United States v. Hernandez*, 234 F.3d 252,
256-57 (5th Cir. 2000) (discussing a federal sentence that would run consecutive to
a state sentence, "the district court need only advise a defendant of consequences
that affect his federal sentence. Thus, the application of a no-discretion
construction of § 3584, the effect of which would be that the federal sentence
would run consecutive to a later-imposed state sentence, would not affect the
length of defendant's federal term of imprisonment and therefore is not a
consequence of which defendant must be warned."); *But see United States v.
Neely*, 38 F.3d 459, 461 (9th Cir. 1993) ("Because the imposition of a consecutive
sentence is a direct consequence of a federal guilty plea where the federal court
lacks discretion to order a concurrent sentence, a federal defendant must be advised
of the court's lack of discretion before he can enter a voluntary plea of guilty.") In
Petitioner's case, there can be no question that the consecutive nature of
Petitioner's sentence had a direct impact on his *federal* sentence and, therefore,
counsel and the court had a duty to advise Petitioner regarding his maximum
sentence exposure.

In the instant matter, as in *Gordon* and *Martuscello,* the evidence establishes
that neither counsel nor the court adequately advised Petitioner regarding the
possibility, or requirement, of consecutive sentences. Despite the district court's

assertion, the record clearly establishes that the plea court never did anything to clarify Petitioner's true sentencing exposure. While the court did list the maximum for each count, it never explained that the sentence on each count could or had to run consecutively, exposing Petitioner to a much greater sentence. In fact, listing the 30 year maximum for each count helped to affirm counsel's advice, because Petitioner kept hearing was a maximum of thirty years. It was with thirty years in mind that Petitioner signed the Guilty Plea of Rights Certification. Petitioner never dreamed that he was facing a possible 960 years by entering the plea and would not have pled guilty if he had known.

Additionally, on the habeas, the district court never addresses the fact that there is no correspondence from Counsel to Petitioner explaining the possibility of consecutive sentences. The serious nature of this information cannot be left to a mere claim of having told the Petitioner such exposure existed. (*See* Civ. Doc. # 28, Affidavit of Gregory Reid).[5]  Such sentencing exposure has several layers; one the statute, two the guidelines and three the mandate of consecutive time based on the final determination of the guidelines or if it is a mandate at all.[6]

It is apparent that at sentencing, counsel believed the statutory maximum was 30 years and argued that if congress intended the statutory maximum to be life

---

[5] Petitioner disputes the attorney's affidavit and a hearing should have been held in this fact alone.

[6] The sentencing court erred when determining the counts must run consecutive to meet the guidelines and counsel never objected to this error.

they would have said so. (Crim. Doc. # 40, pp. 70-71). Counsel never suggests the counts would run consecutive or even thought so. Counsel's single strategy of seeking a variance in a blind plea could not be based on an understanding that the Petitioner was exposed to life in prison. Rather, it is clear counsel was arguing for less than 30 years in line with what he had advised Petitioner his full sentencing exposure was. It is not surprising then that counsel advised Petitioner in accordance with this belief.

The defect in counsel's advice is even more critical because the court believed that it was required to sentence Petitioner to consecutive sentences based on the PSR. The court at sentencing indicated that consecutive sentencing was what congress intended. (Crim. Doc. # 40, pp. 70-71). If the court was correct, then advising Petitioner that there was even a possibility of a 15-30 year sentence was entirely unreasonable, misleading, and ineffective. Petitioner was not fully advised of the possible consequences because he would not have ever entered a plea where he received no benefit. With a 960 year sentence, what is the quid pro quo?

**B. IS A DISTRICT COURT REQUIRED, AT THE ENTRY OF A GUILTY PLEA, TO ADVISE A DEFENDANT THAT MULTIPLE COUNTS CAN RUN CONSECUTIVE, OR IN THIS CASE THE ERRONEOUS BELIEF THAT THE COUNTS MUST RUN CONSECUTIVE, IF THE GUIDELINES EXCEED THE STATUTORY MAXIMUM ON A SINGLE COUNT?**

This court should address the following aspects of this issue which are debatable among reasonable jurists of the deprivation of a constitutional right:

1. Does the District court commit error when it does not advise the defendant of the possibility that the counts pled to can run consecutive for sentencing purposes?

2. Did the District court commit error when it believed the counts pled to had to run consecutive to achieve the guidelines and failed to advise the defendant of that possibility at the plea?

There can be no dispute that had Petitioner been advised that by entering the plea that he faced 960 years in prison, and that the court would be obligated to impose such a sentence, that Petitioner would not have entered the plea. He received absolutely no benefit under the terms of the plea. His only reason for entering the plea was to argue for a sentence less than what he believed to be the range – 15-30 years. It is not enough for a court to merely state that each count carries a maximum sentence of 30 years without advising the defendant that each count can also run consecutive to each other on their own or to achieve a particular guideline sentence regardless of the advisory nature of the guidelines. A lay person is not equipped to understand this distinction, and in such a case as this should be advised of the true maximum sentence exposure. Here the court also thought the sentences had to run consecutive to achieve the guideline range and that congress intended this result. As a result of what appears to be the courts mistaken belief that consecutive sentencing was mandated, this court may also need to resolve the

issue of whether this conclusion by the District court was in error to such a degree as to constitute a miscarriage of justice, plain error or a direct violation of a defendants due process rights.

Rule 11 states that the court is to advise a defendant of the maximum "possible" penalty…" Such "possible penalty" would have to be that the counts pled to can or will run consecutive depending on the guidelines. This is different than merely advising the sentences could run concurrently.   Even without guidelines that exceed 30 years a defendant has the right to know that a judge could run the counts consecutively to achieve a sentence the court deemed reasonable. (Rule 11(b)(H), see also Rule 11(b)(M)). For a defendant to truly understand the consequences of a plea, he must be told that a plea to multiple counts can result in consecutive sentencing. Informing a defendant about the direct consequences of his plea requires the court to inform the defendant of "any maximum possible "penalty, including imprisonment, fine and term of supervised release", Rule 11(b)(1)(H). As in *United States v. Oliver*, 281 Fed.Appx. 898 (11th Cir. 2008) the court mentioned the potential for consecutive sentences which was enough to alert a defendant of these consequences. Here in Petitioner's case, no such mention is evidenced in the record by the court or counsel. Other case law on advising of consecutive sentencing possibilities primarily deals with whether the court is obligated under Rule 11 to advise a defendant of the possibility of

consecutive sentences in a federal case to a state case. (e.g. *United States v. Henry*, 702 F.3d 277 (7th Cir. 2012); *United States v. Hahn*, 261 Fed. Appx. 90 (10th Cir. 2008) (here the court did not have to advise of consecutive sentencing in separate cases); *United States v. Ospina* 18 F.3d 1332 (6th Cir. 1994)(again discussing consecutive federal sentencing with state sentencing) and same conclusion in *United States v. Parkins*, 25 F.3d 114 (2d Cir. 1994). The case law is not clear on this issue especially as it relates to sentencing decisions on multiple counts independently or in compliance with a guideline range. In Petitioner's case it is even more significant in light of the court's comment indicating that a consecutive sentence appeared mandated. The court specifically stated that congress expected consecutive sentences on these cases. (Doc #40 pp. 70-71). The court mistakenly went on to state that the statute provided such a sentencing disposition. If this is what the court thought, Petitioner had a right to know if the true language of Rule 11 were followed. ("any maximum possible "penalty, including imprisonment, fine and term of supervised release", Rule 11(b)(1)(H)). If the language of Rule 11 is ambiguous as it relates to advising defendants of the consecutive nature of multiple counts then the Rule of lenity applies and the advice to a defendant should include at the very least the possibility of consecutive sentences in multiple count cases. (Counsel never objected to the court's interpretation of the guidelines, congressional intent or the statute).

20

At a minimum, reasonable jurists could find it debatable whether Petitioner was adequately advised regarding the real possibility that his sentences could run consecutive, exposing him to a 960 year sentence, before entering the plea and whether this failure to advise Petitioner rendered his plea involuntary. Therefore, it is respectfully requested that this Honorable Court grant a Certificate of Appealability on this issue.

### C. IS A DEFENDANTS PLEA INVOLUNTARY AS A RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILS TO PROPERLY ADVISE A DEFENDANT REGARDING THE ABILITY TO FILE A SUPPRESSION FOR EVIDENCE TAMPERING

While the district court summarily rejected Petitioner's grounds related to the Fourth Amendment violation and the failure to disclose the discovery on procedural grounds and stating that these grounds were "without specificity" and that Petitioner was aware of the evidence against him (Civ. Doc. # 20, pp. 12, 17), this rejection overlooks the procedural status and the facts of the case. An examination of the record, demonstrates that Petitioner raised this ground at the first opportunity and that he has provided clear and convincing evidence that his Fourth Amendment rights were violated by the search of his home but that he was unaware of this violation because counsel failed to advise him. Had Petitioner been adequately advised regarding the possibility of filing a suppression motion, he would not have entered the plea and, therefore, his plea was unknowing and

involuntary. This court should address this issue as it is highly debatable among reasonable jurists of the deprivation of a constitutional right.

First, as to the procedural default, Petitioner could not have raised the voluntariness of the plea on direct appeal because he was still represented by plea counsel who did not believe Petitioner's plea was involuntary. It is understandable that plea counsel held this mistaken belief that the plea was knowing and voluntary because to recognize to the contrary counsel would have had to recognize his own ineffectiveness.

Georgia cases, where claims of ineffective assistance of counsel must be raised at the first practical opportunity, addressing a defendant's right to new counsel on appeal are instructive in this matter. Specifically, in *Garland v. State*, 283 Ga. 201, 657 S.E.2d 842 (2008), after recognizing the right to effective assistance of conflict free counsel on appeal, the Georgia Supreme Court acknowledged its longstanding holding that "appellant's trial counsel could not reasonably be expected to assert or argue his own ineffectiveness on appeal[]" because "[c]ounsel prosecuting an ineffective assistance claim must be free to operate independently of the attorney whose performance is in question." *Id.* at 203. *See also Massaro v. United States*, 538 U.S. 500, 507, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (recognizing that if federal courts adopted a rule such as Georgia's relating to the timing of ineffective assistance of counsel claim then

"[u]nder that rule a court on collateral review must determine whether appellate counsel is 'new[].'"); *Cf. Billy-Elko v. United States,* 8 F.3d 111 (2d Cir. 1993) (abrogated by *Massaro* changing the rule when claims of ineffective assistance of counsel must be brought in federal court, but recognizing that under a rule similar to Georgia's that "If the defendant has *new appellate counsel* on direct appeal, and the record is fully developed on the ineffective assistance issue, there is little reason to extend the defendant an unlimited opportunity to delay bringing the claim." (emphasis added)).

Just as in these cases, here appellate counsel could not raise the issue regarding the voluntariness of the plea because he would have had to say he was ineffective – an important fact that the district court overlooked.

Second, contrary to the district court's assertion, Petitioner made a specific showing that his Fourth Amendment rights were violated when the officer tampered with the evidence in this case. (*See e.g.,* Civ. Doc. # 19 Attachment A); *See also* http://www.tuscaloosanews.com/article/20070501/NEWS/705010351. Usually it is hard to prove evidence tampering, but here the officer admitted to his misconduct. Petitioner, however, was unaware of the extent of the misconduct because counsel failed to advise Petitioner regarding it and the discovery that was not made available included documents revealing this misconduct (not just the images the district court addresses).

Further, Petitioner was harmed by his counsel's incomplete advice and his failure to make the discovery available because, had counsel either adequately advised Petitioner or made discovery available to him, he would have discovered that the officer tampered with the evidence, making the evidence excludable. *Cf. United States v. Patillo*, 403 Fed. Appx. 761, 766 (3d Cir. 2010) ("'To establish a chain of custody, the government need only show that it took reasonable precautions to preserve the evidence in its original condition, even if all possibilities of tampering are not excluded.' Additionally, '[a]bsent actual evidence of tampering, a trial court may presume regularity in public officials' handling of contraband.'" (internal citations omitted); *United States v. Prieto*, 548 F.3d 513, 524 (7th Cir. 2008) ("'The standard for the admission of exhibits into evidence is that there must be a showing that the physical exhibit being offered is in substantially the same condition as when the crime was committed.'") (citations omitted). With the exclusion of this evidence, Petitioner would not have entered a blind guilty plea.[7]

At a minimum, reasonable jurists could find it debatable whether Petitioner was adequately advised regarding his suppression motion or provided with the necessary discovery before entering the plea and whether these failures rendered

---

[7] The only conceivable reason to approve such a serious suppression issue on police misconduct is because Petitioner believed he would be sentenced to 15 to 30 years in prison.

Petitioner's plea involuntary. Therefore, it is respectfully requested that this Honorable Court grant a Certificate of Appealability on this issue.

### D. DOES AN ATTORNEY RENDER INEFFECTIVE ASSISTANCE AT SENTENCING IN FAILING TO OBJECT TO THE PSR REGARDING THE LACK OF CREDIT FOR ACCEPTANCE OF RESPONSIBILITY THAT CAN BE APPLIED AS A VARIANCE WHEN THE GUIDELINES ARE OVER OFFENSE LEVEL 43.

The district court found that counsel did not provide ineffective assistance of counsel at sentencing because Petitioner admitted to the underlying facts and because counsel pursued an argument, albeit maybe an incorrect one, that the sentences could and should be run concurrently. (Civ. Doc. # 20, pp. 14-16). The district court ignored Petitioner's allegation that counsel was ineffective at sentencing for failing to object to the PSR on the grounds that Petitioner received no benefit for his acceptance of responsibility. (Civ. Doc. # 19, p. 23-25). This failure to object, however, cannot be deemed strategic, was ineffective, and harmed Petitioner. Petitioner received absolutely no benefit for taking a plea including acceptance of responsibility. This court should address this issue as it is debatable among reasonable jurists of the deprivation of a constitutional right.

Petitioner enjoys the right to effective assistance of counsel at sentencing. *Wilson v. United States,* 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant has a constitutional right to effective assistance of counsel at sentencing."). The prejudice prong at sentencing is the same as the one set out in *Strickland. Jones v.*

25

*United States*, 224 F.3d 1251, 1259 (11th Cir. 2000). "The test, however, is not what the court might have done; the test is whether the original sentence comported with the law." *Id.*

Failing to object at sentencing, just as failing to object at trial, can be ineffective. *See e.g.*, *United States v. Beatty,* 35 F.3d 557 (4th Cir. 1994) (unpublished) (counsel failed to file an objection relating to acceptance of responsibility and "[b]oth [the defendant] and the Government contend on appeal that the failure of [the defendant's] trial counsel to file written objections to the presentence report constitutes ineffective assistance of counsel warranting resentencing" and the Fourth Circuit agreed); *Lucas v. United States*, Cr. No. 3:05–0760–MBS, 2009 WL 2588536, at *4 (D.S.C. Aug. 18, 2009) ("Therefore, the court finds that a genuine issue of material fact exists as to whether trial counsel was ineffective for failing to argue that Movant did not waive his right to counsel at the state court proceeding. The court will hold an evidentiary hearing in accordance with Rule 8 of the Rules Governing § 2255 Proceedings with respect to this issue.")

Further, any sentencing strategy must be reasonable and made after adequate investigation. This Court has "reject[ed] the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them."*See e.g. Dobbs v. Turpin*, 142 F.3d 1383 (11th

Cir. 1998) (finding counsel's decision not to investigate a mitigation case at sentencing was not a reasonable trial strategy); *Correll v. Ryan*, 539 F.3d 938, 951 (9th Cir. 2009) ("In short, to the extent that defense counsel had a strategy at all, it cannot be considered an objectively reasonable strategy.").

In the instant matter, counsel's utter and complete failure to object to the PSR was ineffective and unreasonable. Counsel never even objected to the lack of acceptance of responsibility credit in the PSR based on the guidelines. Counsel discussed this briefly at sentencing but this should have been objected to and case law examined on this conflict in the guidelines. *See e.g.*, *United States v Rodriguez*, 64 F.3d 638 (11th Cir. 1995) (acknowledging the problem with cases where the defendant pleads guilty and receives acceptance of responsibility but it is meaningless due to the guidelines calculations being over level 43 with acceptance already applied).

Not one objection was filed against the PSR or the guideline calculations which were life in prison. The only logical reason for not objecting is because counsel believed the sentence would not exceed 30 years in prison regardless of the guidelines. Objecting to the PSR on the grounds that Petitioner was receiving no benefit for his acceptance of responsibility credit could have only aided Petitioner in receiving a lower sentence. Therefore, counsel was ineffective in failing to pursue this objection among others frequently presented in similar cases.

At a minimum, reasonable jurists could find it debatable whether Petitioner received effective assistance of counsel at sentencing. Therefore, it is respectfully requested that this Honorable Court grant a Certificate of Appealability on this issue.

**WHEREFORE**, this Certificate of Appealability should be granted on these questions of law as the Petitioner has made a substantial constitutional showing that his constitutional rights under the Fourth and Sixth Amendment to the United States Constitution were violated and continue to be violated. Therefore, Petitioner respectfully requests that this Honorable Court grant this Certificate of Appealability.

Respectfully submitted,

/s/Marcia G. Shein
MARCIA G. SHEIN
Federal Bar No. 53667
GA State Bar No. 639820
2392 North Decatur Road
Decatur, Georgia 30033
(404) 633-3797
(404) 633-7980(Fax)
Marcia@msheinlaw.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this date electronically filed the above referenced document via the CM/ECF system, which will be electronically delivered to Laura D. Hodge and Mary Stuart Burrell at the U.S. Attorney's office.

This 30th day of September, 2013.

Respectfully submitted,

/s/Marcia G. Shein
Marcia G. Shein
Counsel for Petitioner
Georgia Bar No. 639820
Federal Bar No. 53667
2392 North Decatur Road
Decatur, Georgia 30033
(404) 633-3797
(404) 633-7980 (fax)